IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SAM KHALIL, )
)
    Movant, ) CASE NO. 3:09-0513
) JUDGE HAYNES
v. )
)
UNITED STATES OF AMERICA, )
)
    Respondent. )

## MEMORANDUM

Movant, Sam Khalil, filed this pro se action seeking to vacate his conviction for passing forged United States currency for which he received a sentence of 50 months. After review of the pro se motion, the Court appointed the Federal Public Defender to represent Movant. The Government filed a response as ordered by the Court (Docket Entry No. 8). Movant sought leave to amend his motion to vacate that the Court granted. After two extensions to file an amended motion (Docket Entry Nos. 14, 16, 17 and 19), the amended motion was filed in November, 2011 (Docket Entry No. 20).

In his amended motion to vacate, Movant asserts the following claims of ineffective assistance of counsel: (1) that prior counsel was ineffective for his failures: (1) to object to the Court's denial of a three (3) level reduction for acceptance of responsibility; (2) to seek a variance from the advisory sentencing range; (3) to obtain a psychological evaluation; (4) to call Movant's mother as a mitigation witness at sentencing; and (5) to present mitigation evidence of Movant's emotional condition at his sentencing. (Docket Entry No. 20, ¶¶ 16, 17, 20, 21, 23, 24 and 28).

The Government filed a response, contending, in essence: (1) that Movant failed to demonstrate erred in not awarding Movant a guidelines reduction for acceptance of responsibility:

1

(2) that the amended motion fails to identify any evidence or testimony of any mental health condition to mitigate Movant's criminal conduct; and (3) that Movant's contention of prejudice due to his counsel's omissions are unsupported by the facts and are conclusory. The government also noted that the Movant's mental health was addressed in the presentence report and that Movant himself had personally requested leniency at sentencing precluding any prejudice by his attorney's alleged omission.

Before the Court is Movant's motion for summary judgment (Docket Entry No. 22), arguing that prejudice arises by failure of prior counsel to seek a guidelines sentencing range reduction for acceptance of responsibility and to seek a lesser sentence based on his background and emotional issues. The Court granted Movant's motion to amend his motion for summary judgment. In response, the Government again further submits that Movant lacks factual support for both claims as Movant lacks proof of any mental or emotional condition to justify any mitigation of his sentence. The Government cites the presentence report's reference to Movant as a "businessman" (Docket Entry No. 22 at 4). The Government contends that Movant's motion presents time-barred claims unrelated to his original motion.

### A. Review of the Record

Movant's conviction was based upon his guilty plea and the undisputed facts at Movant's guilty plea hearing were as follows:

> The Secret Service undertook investigation of this matter in early August 2007 when Nashville Metropolitan Police Department relayed a complaint which had been conveyed by a cooperative Nashville resident. The complainant, a local accountant, advised that a day or so previously Sam Khalil approached him first claiming he was looking for accounting assistance with a new business. The topic changed, however, to another proposition. Khalil claimed that he was in possession of about one million dollars that he had found as a bank security guard in or near New Orleans following Hurricane Katrina. Khalil claimed that the currency was genuine but had been stained with dye or some other substance. Khalil claimed that he knew of a man in

2

Chicago that who had a solution that would remove the dye stains, rendering the money clean and spendable. However, the man charged $160,000 or more for the amount of this cleaning solution that was needed to clean the amount of money involved.

Khalil advised that he could not afford the $160,000 fee and offered to share the stained money with the complainant if the complainant would provide Khalil with the money for the purchase of the cleaning solution.

Khalil subsequently showed the complaintant a briefcase filled with what appeared to be U.S. currency stained with some sort of black substance. Khalil removed a note from the briefcase and small vial of liquid from his pocket which he claimed contained the cleaning solution that he could not afford to buy. Khalil then poured the solution into the bowl and dipped the note into the solution. When he removed the note from the bowl, the black dye was gone, and the note appeared to be an authentic $100 Federal Reserve note.

Khalil then retrieved and kept the $100 note when he departed, but he left the briefcase containing the stained money with the complainant. Complainant suspected that he was the intended victim of fraud and reported this matter to Nashville Police, who in turn notified the Secret Service.

On August 8, 2007, Secret Service agents, who are trained and experienced in identifying counterfeit U.S. currency, examined the contents of the briefcase Khalil had given to the complainant. Agents determined that the briefcase contained about 348 counterfeit $100 U.S. Federal Reserve notes and about 2,012 counterfeit $50 Federal Reserve notes.

The complainant contacted Khalil at the direction of the Secret Service, told him he had the money for the cleaning solution, and asked to meet him at the complainant's place of business.

On August 9, 2007, Secret Service agents confronted Khalil at the meeting arranged by the complainant. Agents observed a black suitcase matching the suitcase that Khalil had been seen carrying earlier. Khalil admitted that the suitcase and the briefcase inside the suitcase were his and consented to a search of each. A search revealed a large amount of what appeared to be additional U.S. Currency covered in a black substance and white powder. Further examination revealed that these notes were counterfeit $100 and $50 Federal Reserve notes.

Khalil was thereafter advised of and waived his Miranda rights and agreed to speak with the investigating agents. Khalil told agents he had obtained the currency in question from two individuals he knew only by their first names in Philadelphia, Pennsylvania around the second week of June. Khalil stated that the subjects told

him that their brother had worked at a bank during Hurricane Katrina and had come into possession of a large sum of money that had been stained. Khalil stated he paid the subjects $3,000 for the briefcase of money.

Khalil stated he met with complainant, explained the situation with the money, and asked the complainant to help him manage the money. Khalil admitted to showing the complainant with a small bottle of solution that was provided by the subjects he met in Pennsylvania. He denied placing genuine currency inside the briefcase in order to defraud the complainant. Khalil denied knowing that both batches or currency were counterfeit. Khalil provided a telephone number for Jerry and Henry, which, when dialed by the agents, was found to be nonfunctional.

Khalil gave agents consent to search the premises where he was living in Nashville, and his laptop computer, which he advised only he had used. The search of the premises revealed additional stained counterfeit currency, several cans of black spray paint, and a cardboard box, and a sheet of cardboard, which both bore blackened outlines which were the same dimension as U.S. currency. A forensic search of the data contained in the computer revealed searches for, references to, and descriptions of, a scheme to defraud that involved black money, which involved obtaining money by misrepresenting stained counterfeit notes as being legitimate notes that needed cleaning.

Defendant's cell phone records for the above time frame have been subpoenaed and reviewed. They do not reflect any calls between Khalil and the number for Jerry and Henry he gave agents, which upon examination appears to be a number comprised of rearranged digits from Khalil's own cell phone number.

All of the suspect counterfeit currency seized in this case has been forensically examined. The stain on the currency is paint. Two legitimate notes were discovered, while a total of over $600,000 worth of counterfeit U.S. Obligations, that is, items which purported to be $100 and $50 Federal Reserve Notes, was found.

(Case No. 3:07-cr-216, Docket Entry No. 66, Plea Hearing Transcript at 22-26). At his guilty plea hearing, Movant was advised that his guilty plea could result in his removal from this country. Id. at 28.

At his sentencing hearing the guideline range was 46 to 57 based upon an offense level of 23 and Movant's criminal history category I. Id. at Docket Entry No. 65, Sentencing Transcript at 4. Movant cited his need for drug treatment, id. at 7, for which the Court recommended placement in the Bureau of Prison's 500 hours drug program. Id. at 8.

The Court sentenced Movant to 50 months, the appropriate mid-point of the guideline range of 46-57. Id. at 4, 8. At the sentencing hearing, Movant explained his conduct as a result of being "at the wrong place at the wrong time" and that he had "followed" others, id. at 5, but there was not any proof of authorities. Id. at 7. The Court noted that Movant's "repeated non-compliance with the conditions" of his pretrial release. Id.

## B. Conclusions of Law

To vacate his conviction under 28 U.S.C. § 2255, the Movant must prove a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Farley, 512 U.S. 339, 354 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996). In reviewing a motion under § 2255, a court should consider the "files, records, transcripts and correspondence relating to the judgment under attack." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. If the judge considering the § 2255 motion also conducted the underlying proceeding, the judge may rely on his recollection of those proceedings. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

In his amended motion, Movant's claims are for his counsel's failures to object to the Court's denial of a 3 level reduction for acceptance of responsibility; to seek a variance from the advisory sentencing range; to obtain a psychological evaluation; to call Movant's mother as a mitigation witness; and to present mitigation evident of Movant's emotional condition. In his amended motion for summary judgment (Docket Entry No. 39), Movant adds a claim that the trial counsel failed to seek a downward departure; to avoid deportation; and to introduce evidence of Movant's borderline intellectual functioning. The Government contends these latter claims are time barred.

Unless a claim "relate back" to Movant's original timely claims, the amended claims are subject to the one year time limit. Mayle v. Felix, 545 U.S. 644, 650 (2005) and Pinchon v. Myers, 615 F.3d 631, 643 (6th Cir. 2010). The Court concludes that because the latter claims are not based upon facts in Movant's original motion, the new claims in Movant's amended motion for summary judgment are time-barred.

To establish ineffective assistance of counsel, Movant must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and

on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691. Counsel's failure "to conduct a constitutionally adequate pretrial investigation into potential mitigation evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, No. 98-1616, 2000 WL 712376, at *3-4 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Movant must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams v. Taylor, 529 U.S. 362, 390-91 (2000). In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

Where the ineffective assistance of counsel claim involves a guilty plea, Movant must present proof that but for his counsel's acts or omissions and under all of the circumstances, he would not have pled guilty and would have insisted upon a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This assessment includes whether any "affirmative defense likely would have succeeded at trial," id.; Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003), and whether any cited evidence "likely would have changed the outcome of the trial." Hill, 474 U.S. at 59; Dando v. Yukins, 461 F.3d 791, 800 (6th Cir. 2006).

As to trial counsel's failure to seek a three level reduction for acceptance of responsibility, the sentencing guidelines authorize a third level reduction for the timely acceptance of responsibility, but "only on motion of the government." USSG § 3E.1.1(b); United States v.

7

Lapsins, 570 F.3d 758, 770-771 (6th Cir. 2009). Movant pled guilty after the Government prepared for trial. The Government did not file a motion for a three (3) level reduction. Thus, Movant could not have been prejudice by any omission of his counsel on this claim.

For a two level reduction, Movant bore the burden of demonstrating acceptance of responsibility by a preponderance of the evidence. United States v. Kathman, 490 F.3d 520, 524 (6th Cir. 2007). Movant's statements to the Court about his criminal conduct were insufficient to clearly demonstrate acceptance of responsibility. United States v. Bacon, 617 F.3d 452, 458-59 (6th Cir. 2010). Movant's attempt to blame others for which there is not any proof is inconsistent with this reduction. See United States v. Edwards, 272 F.3d 812, 816 (6th Cir. 2001). A guilty plea does not automatically entitle a defendant to acceptance of responsibility reduction, particularly given Movant's repeated violations of the conditions of pretrial release. See United States v. Humphreys, 108 Fed. Appx. 329, 330-31 (6th Cir. 2004).

As to his counsel's failure to seek a more lenient sentence and introduce mitigation evidence of Movant's mental condition, emotional issues and background, Movant submits several affidavits (Docket Entry No. 22, Exhibits 1, 2, 4, 9 and 10). Ms. Dukuly, Movant's mother, states that if called as a witness at sentencing, she could describe events and conditions in Liberia. Ms. Dukuly's statements are in the presentence report at page eight (8), but Movant's mother stated that she has been in the United States since 1981 and lack personal knowledge of events during the year cited by Movant.

Once Movant was in the United States, Ms. Dukuly states Movant "calmed down" and got on with his life. Mr. Weah, Movant's brother, relates his experiences in Liberia when Movant lived there. Weah describes Movant's behavior after his arrival in the United States as easily agitated and becoming upset at work. According to Weah, Movant never sought counseling or medication to

8

control these issues. Ms. Roberts, Movant's daughter, describes Movant as a "smart businessman," skilled auto mechanic and attentive parent. For his mental issues, Movant cites "flashbacks" of the war in Liberia.

Although Movant refers to BOP "treatment records" on whether a psychological evaluation should have been obtained, these records have not been produced to the Court. In his affidavit, Movant cites his "contact" with Augustine Peter, an old friend that Movant earlier identified two Philadelphia men "Jerry" and "Henry," who arranged a "set-up" of his possession of counterfeit currency. (Docket Entry No. 22, Exhibit 3, Presentence Report at ¶¶ 11, 16). Yet, at sentencing, the Government cited its inability to identify any other persons in the Movant's crime. Movant acknowledged that his guilty plea created a risk of his deportation. Movant now states that he thought the Court had sentenced him to 15 months as opposed to 50 months. Given that Movant received a sentence at the mid-point of his sentencing guideline range, the Court concludes Movant did not establish prejudice for his counsel's cited omissions.

An appropriate Order is filed herewith.

It is so **ORDERED**.

ENTERED this the ___ day of December, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge

IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SAM KHALIL, | ) | |
| Movant, | ) ) ) | CASE NO. 3:09-0513 |
| v. | ) ) | JUDGE HAYNES |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) | |

## ORDER

In accordance with the Memorandum filed herewith, this action is **DISMISSED with prejudice**. The Court declines to grant a Certificate of Appealability under 28 U.S.C. § 2253(c).

This is the Final Order in this action.

It is so **ORDERED**.

ENTERED this the 9TH day of December, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge